# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALONA STRAIT, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>ORBITAL ATK, INC., DAVID W. THOMPSON, and GARRETT E. PIERCE,<br><br>               Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Alona Strait ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Orbital ATK, Inc. ("Orbital ATK" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Orbital ATK; and (c) review of other publicly available information concerning Orbital ATK.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Orbital ATK securities between June 1, 2015, and August 9, 2016, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Orbital ATK is an aerospace and defense company that operates in the United States and internationally. On or around February 9, 2015 Alliant Techsystems, Inc. ("ATK") merged its aerospace and defense operations with Orbital Sciences Corporation ("Orbital Sciences") to create an entity named Orbital ATK, Inc.  Orbital ATK purportedly designs, builds and delivers space, defense and aviation-related systems to customers around the world both as a prime contractor and as a merchant supplier.   Its main products include tactical missiles, subsystems and defense electronics; and precision weapons, armament systems and ammunition.

3.      Since 2000 ATK has operated an ammunition plant in Independence, Missouri known as the Lake City Army Ammunition Plant (the "Lake City Plant"). ATK's contract to operate the Lake City Plant extends through September 2020, and the prime contract at Lake City, which includes modernization, accounted for approximately 14% of ATK's total revenue in

fiscal 2013.  Upon consummation of the Orbital Sciences and ATK merger, the Lake City Plant was operated under the Defense Systems Groups of Orbital ATK.

4.      On August 10, 2016, Orbital ATK announced that it was delaying the filing of its Quarterly Report on Form 10-Q for the second quarter of 2016 due to "an ongoing review of accounting matters related to a Defense Systems Group contract."   The Company further disclosed that that the Company made misstatements related primarily to a $2.3 billion long-term contract with the U.S. Army to manufacture and supply small caliber ammunition at the U.S. Army's Lake City Army Ammunition Plant.  As a result, the Company disclosed that it expects to restate its financial statements for the fiscal year ended March 31, 2015 (fiscal 2015), the nine-month transition period ended December 31, 2015, the quarters in fiscal 2015 and the 2015 transition period, and the quarter ended April 3, 2016.  The Company also stated that it believes that the misstatements that caused the need for a restatement indicate the existence of one or more material weaknesses in its internal control over financial reporting and disclosure controls and procedures during the relevant periods.

5.      On this news, Orbital ATK's stock price fell $17.98 per share, over 20%, to close at $70.79 per share on August 10, 2016, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was improperly accounting for items related to a Defense Systems Group contract in violation of Generally Accepted Accounting Principles ("GAAP"); (2) that the Company was overstating revenues and understating losses associated with the operations of the Lake City Plant (3) that the Company's internal controls over financial

reporting, as well as the Company's disclosure controls and procedures, contained a material weakness; and (4) that, as a result of the foregoing, Orbital ATK's financial statements, and Defendants' statements about Orbital ATK's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's shares are actively traded in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff Alona Strait, as set forth in the accompanying certification, incorporated by reference herein, purchased Orbital ATK common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Orbital ATK is a Delaware corporation with its principal executive offices located at 45101 Warp Drive, Dulles, Virginia.

14.     Defendant David W. Thompson ("Thompson") was, at all relevant times, the Chief Executive officer ("CEO") of Orbital ATK.

15.     Defendant Garrett E. Pierce ("Pierce") was, at all relevant times, the Chief Financial Officer ("CFO") of Orbital ATK.

16.     Defendants Thompson and Pierce are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Orbital ATK's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each

"group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

17.    The Class Period begins on June 1, 2015.  On that day, Orbital ATK filed its first

annual report as a merged entity on Form 10-K for the period ended March 31, 2015. Therein,

the Company, in relevant part, stated:

> The Company's small-caliber ammunition operations for the U.S. military and
> U.S. allies are conducted at the LCAAP in Independence, Missouri. Lake City is
> the Army's principal small-caliber ammunition production facility and is the
> primary supplier of the U.S. military's small-caliber ammunition needs. The
> Company took over operation of this facility in 2000 and is responsible for the
> operation and management, including leasing excess space to third parties in the
> private sector. In September 2012, the Company was awarded a new contract for
> the continued production of ammunition and continued operation and
> maintenance of LCAAP. The production contract runs through September 2019
> and the facility contract runs through September 2020, with an option to extend
> the contract to 2023. As a result of the significant competition for this contract,
> the Company has experienced a lower profit rate in the Small-Caliber Systems
> division following the implementation of our new contract. In addition, future
> levels of government spending cannot be predicted with certainty and thus the
> Company's production under this contract cannot be predicted with certainty.

18.    In the Form 10-K, the Company, in relevant part, reported annual sales of $3.173

billion.   Orbital ATK also stated in the 10-K that "[t]he military small-caliber ammunition

contract, which is reported within Defense Systems Group, contributed 13%, 9% and 19% to the

Company's sales in fiscal 2015, 2014 and 2013, respectively" and that the Defense Systems

Group accounted for $1.89 billion in sales for fiscal year 2015.

19.    The Form 10-K contained certifications pursuant to the Sarbanes-Oxley Act of

2002 ("SOX"), signed by Defendants Thompson and Pierce, who certified the following:

1. I have reviewed this annual report on Form 10-K of Orbital ATK, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a

material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

> b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

> c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

> d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

> a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably

likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

20.     On August 11, 2015 Orbital ATK filed its quarterly report on Form 10-Q for the period ended July 5, 2015. Therein, the Company, in relevant part, reported sales of $1.129 billion, gross profit of $254.42 million, and net income of $72.75 million. Regarding the Defense Systems Group, ATK reported that the defense group generated $437.7 million in external sales for the quarter.

21.     The Form 10-Q also contained certifications pursuant to SOX, signed by Defendants Thompson and Pierce, substantially similar to the certification described in ¶19, *supra*.

22.     On November 5, 2015 Orbital ATK filed its quarterly report on Form 10-Q for the period ended October 4, 2015. Therein, the Company, in relevant part, reported sales of $1.134 billion, gross profit of $250.15 million, and net income of $66.4 million. Regarding the Defense Systems Group, ATK reported that the defense group generated $451.1 million in external sales for the quarter.

23.     The Form 10-Q also contained certifications pursuant to SOX, signed by Defendants Thompson and Pierce, substantially similar to the certification described in ¶19, *supra*.

24.     On March 15, 2016, Orbital ATK filed an annual report for the transition period from April 1, 2015 to December 31, 2015 on Form 10-K, and informed investors that the Company had changed its fiscal year to the period beginning on January 1 and ending on December 31.

25.     In the Form 10-K, the Company, in relevant part, reported sales of $3.399 billion. Regarding the Defense Systems Group, Orbital ATK reported that the defense group generated $1.333 billion in sales for the nine months ended December 31, 2015.

26.     The Form 10-K also contained certifications pursuant to SOX, signed by Defendants Thompson and Pierce, substantially similar to the certification described in ¶19, *supra*.

27.     On May 9, 2016 Orbital ATK filed its quarterly report on Form 10-Q for the period ended April 3, 2016. Therein, the Company, in relevant part, reported sales of $1.064 billion, gross profit of $222.25 million, and net income of $69.83 million. Regarding the Defense Systems Group, Orbital ATK reported that the defense group generated $432.22 million in external sales for the quarter.

28.     The Form 10-Q also contained certifications pursuant to SOX, signed by Defendants Thompson and Pierce, substantially similar to the certification described in ¶19, *supra.*

29.     The above statements identified in ¶¶17-28 were false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company was improperly accounting for items related to a Defense Systems Group contract in violation of GAAP; (2) that the Company was overstating revenues and understating losses associated with the operations of the Lake City Plant (3) that the Company's internal controls over financial reporting, as well as the Company's disclosure controls and procedures, contained a material weakness; and (4) that, as a result of the foregoing, Orbital ATK's financial statements, and Defendants' statements about Orbital ATK's business,

operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

30.     On August 10, 2016, Orbital ATK announced that it was delaying the filing of its Quarterly Report on Form 10-Q for the second quarter of 2016 due to "an ongoing review of accounting matters related to a Defense Systems Group contract." Therein, the Company, in relevant part, stated:

> The Audit Committee of the Board of Directors (the "Audit Committee") of Orbital ATK, Inc. (the "Company"), after considering the recommendation of management, concluded on August 8, 2016 that the Company's previously issued financial statements for the fiscal year ended March 31, 2015 ("fiscal 2015"), the nine-month transition period ended December 31, 2015 ("2015 transition period"), the quarters in fiscal 2015 and the 2015 transition period, and the quarter ended April 3, 2016 (the "Restated Periods"), and related reports of independent registered public accounting firms thereon, should no longer be relied upon as a result of the misstatements described below. The Company expects to restate (the "Restatement") the financial statements for the Restated Periods. As described more fully below, the Company is still evaluating whether financial statements for annual and quarterly periods prior to fiscal 2015 can continue to be relied upon.

> The misstatements which the Company has identified relate primarily to its $2.3 billion long-term contract (the "Contract") with the U.S. Army to manufacture and supply small caliber ammunition at the U.S. Army's Lake City Army Ammunition Plant. The Contract, which is accounted for under the percentage of completion revenue recognition method, is managed by the Small Caliber Systems Division within the Defense Systems Group. The Contract was entered into in September 2012 and is for a term of up to 10 years (an initial term of seven years plus three additional years at the option of the Army).

> After considering the misstatements described below, the Company believes that the Contract will result in a net loss over its 10-year term. Under generally accepted accounting principles, the Company is required to record the entire anticipated forward loss provision for a contract in the period in which the loss becomes evident. The Company believes that a forward loss provision should have been recorded for the Contract in fiscal 2015, which was the first year of large-scale production under the Contract.

> The misstatements were discovered in connection with management's enterprise business optimization program, working capital efficiency initiative and ongoing efforts to enhance accounting controls and oversight. Management subsequently identified that the underlying costs estimate at completion for the Contract in prior

periods contained misstatements which, when corrected, indicate that the Contract's estimated costs were in excess of the contracted revenues of $2.3 billion, necessitating a forward loss charge for the 10-year term of the contract.

The Company estimates that this forward loss provision will reduce previously reported pre-tax operating income by approximately $400 million to $450 million, after-tax net income by approximately $250 million to $280 million, and the applicable balance sheet accounts including retained earnings by approximately $250 million to $280 million.  These adjustments, which are illustrated in the table below, represent the Company's current estimate of the entire anticipated forward loss for the full 10-year term of the Contract.  The misstatements also resulted in revenues being overstated by $100 million to $150 million, primarily in fiscal 2015, but also to a lesser extent in subsequent periods, and in unbilled receivables being overstated by $100 million to $150 million in fiscal 2015 and in subsequent periods.  Based on the information currently available, management believes that the primary impact of the Restatement is in fiscal 2015, but there are also related changes necessary in periods subsequent to fiscal 2015.  The resulting adjustments to the balance sheet accounts including the reductions in retained earnings affect the opening and/or closing balances of retained earnings in all periods subsequent to fiscal 2015, and are the primary reason for the Restatement of periods subsequent to fiscal 2015.  The Company's evaluation of the misstatements is ongoing and, accordingly, the determination as to which fiscal period the forward loss provision and related effects should have been recorded is preliminary and could change.  The Company continues to evaluate whether periods prior to fiscal 2015 are materially misstated and whether a portion of the loss should be treated as a change in estimate in the quarterly period ended July 3, 2016.  The Company believes that the Restatement will not have a material impact on the Company's operating cash flow, cash balances or backlog as of and for the Restated Periods.

The following table illustrates the Company's preliminary estimates of the anticipated ranges and time periods of the primary adjustments to the Company's income statement likely to be associated with the Restatement.  Related adjustments to the balance sheet and equity statement are omitted from the table for simplicity of presentation.

| ($'s in millions) | Total Adjustments | 12 Months Ended March 31, 2015 | 9 Months Ended December 31, 2015 | 3 Months Ended April 3, 2016 |
|---|---|---|---|---|
| Previously Reported Revenues | | $3,174 | $3,399 | $1,065 |
| Adjustments | $(100) to $(150) | (70) to (95) | (25) to (40) | (5) to (15) |
| Preliminary Restated Revenues | | $3,079 to $3,104 | $3,359 to $3,374 | $1,050 to $1,060 |
| | | | | |
| Previously Reported Income (Loss) from Continuing Operations, Before Interest, Income Taxes and Non-Controlling Interest | | $232 | $322 | $116 |
| Adjustments | $(400) to $(450) | (390) to (475) | (5) to 20 | (5) to 5 |
| Preliminary Restated Income (Loss) from Continuing Operations, Before Interest, Income Taxes and Non-Controlling Interest | | $(243) to $(158) | $317 to $342 | $111 to $121 |
| | | | | |
| Previously Reported Net Income (Loss) from Continuing Operations | | $77 | $181 | $70 |
| Adjustments | $(250) to $(280) | (245) to (295) | (2) to 12 | (3) to 3 |
| Preliminary Restated Net Income (Loss) from Continuing Operations | | $(218) to $(168) | $179 to $193 | $67 to $73 |

The Company is continuing to review and assess the aforementioned matters with the assistance of outside professionals. The amounts and time periods disclosed in the above table could change.

The Company intends to amend its Transition Report on Form 10-K for the 2015 transition period, and its Quarterly Report on Form 10-Q for the quarter ended April 3, 2016, as soon as reasonably practicable. The Company may determine to amend the Forms 10-Q for the quarterly periods ended June 29, 2014, September 28, 2014, December 28, 2014, July 5, 2015 and October 4, 2015 or to include the restated financial information for those interim periods in its amended Form 10-K for the 2015 transition period. In addition, in view of the ongoing work in this regard, the Company will not file its upcoming Quarterly Report on Form 10-Q for the quarter ended July 3, 2016 by August 12, 2016. The Company expects to file that Quarterly Report and the above-described amended reports with the Securities and Exchange Commission ("SEC") as soon as reasonably practicable. The failure to file a periodic report with the SEC, such as the Company's Form 10-Q for the quarter ended July 3, 2016, could give rise to an event of default under the Company's credit agreement. The Company, however, has entered into an extension agreement with the lenders party to the credit agreement extending the reporting requirement under the credit agreement until November 14, 2016.

The Audit Committee has discussed the foregoing matters with PricewaterhouseCoopers LLP ("PwC"), the Company's current independent

registered public accounting firm, and Deloitte & Touche LLP ("Deloitte"), the Company's former independent registered public accounting firm for fiscal 2015 and prior fiscal periods. PwC and Deloitte have not completed their procedures related to the restated financial statements and, accordingly, have not reached any conclusions on these matters. All adjustments and amounts and time periods described herein are preliminary and subject to revision due to the ongoing review and assessment of these matters by the Company.

The Company believes that the misstatements that caused the Restatement indicate the existence of one or more material weaknesses in its internal control over financial reporting and disclosure controls and procedures during the Restated Periods. The Company will report those material weaknesses in its amended reports and in its Quarterly Report on Form 10-Q for the quarter ended July 3, 2016.

31.    On this news, Orbital ATK's stock price fell over 20%, or $17.98 per share, to close at $70.79 per share on August 10, 2016, on unusually heavy trading volume.

## ORBITAL ATK'S VIOLATION OF GAAP RULES
## IN ITS FINANCIAL STATEMENTS
## FILED WITH THE SEC

32.    The financial statements and the statements about the Company's financial results identified above were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's admitted misstatements, in violation of GAAP rules.

33.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

34.     The fact that Orbital announced that it intends to restate certain of its financial statements, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154, 25).

35.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c)     The principle that "financial reporting should provide information about the economic resources of Orbital ATK, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d)     The principle that "financial reporting should provide information about Orbital ATK's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e)     The principle that "financial reporting should provide information about how management of Orbital ATK has discharged its stewardship responsibility to owners (stockholders) for the use of Orbital ATK resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f)     The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

36.     The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Orbital ATK securities between June 1, 2015, and August 9, 2016, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Orbital ATK's securities were actively traded on the New York Stock Exchange (the "NYSE"). While the exact number of Class members is

unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Orbital ATK shares were traded publicly during the Class Period on the NYSE.  As of May 2, 2016, Orbital ATK had 58,557,150 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Orbital ATK or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Orbital ATK; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

43.     The market for Orbital ATK's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Orbital ATK's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Orbital ATK's securities relying upon the integrity of the market price of the Company's securities and market information relating to Orbital ATK, and have been damaged thereby.

44.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Orbital ATK's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Orbital ATK's business, operations, and prospects as alleged herein.

45.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about Orbital ATK's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

46.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

47.     During the Class Period, Plaintiff and the Class purchased Orbital ATK's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

48.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Orbital ATK, his/her control over,

and/or receipt and/or modification of Orbital ATK's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Orbital ATK, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

49.     The market for Orbital ATK's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Orbital ATK's securities traded at artificially inflated prices during the Class Period.  On January 6, 2016, the Company's stock closed at an adjusted Class Period high of $93.88 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Orbital ATK's securities and market information relating to Orbital ATK, and have been damaged thereby.

50.     During the Class Period, the artificial inflation of Orbital ATK's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Orbital ATK's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Orbital ATK and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

51.     At all relevant times, the market for Orbital ATK's securities was an efficient market for the following reasons, among others:

(a)     Orbital ATK stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Orbital ATK filed periodic public reports with the SEC and/or the NYSE;

(c)     Orbital ATK regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Orbital ATK was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

52.     As a result of the foregoing, the market for Orbital ATK's securities promptly digested current information regarding Orbital ATK from all publicly available sources and reflected such information in Orbital ATK's stock price. Under these circumstances, all purchasers of Orbital ATK's securities during the Class Period suffered similar injury through their purchase of Orbital ATK's securities at artificially inflated prices and a presumption of reliance applies.

53.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128

(1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Orbital ATK who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Orbital ATK's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

57.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Orbital ATK's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Orbital ATK's financial well-being and prospects, as specified herein.

59.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a

course of conduct as alleged herein in an effort to assure investors of Orbital ATK's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Orbital ATK and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

60.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

61.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Orbital ATK's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62.      As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Orbital ATK's securities was artificially inflated during the Class Period.   In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Orbital ATK's securities during the Class Period at artificially high prices and were damaged thereby.

63.      At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.   Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Orbital ATK was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Orbital ATK

securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

64.   By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

66.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.   The Individual Defendants acted as controlling persons of Orbital ATK within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, Orbital ATK and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  August 18, 2016                    **GLANCY PRONGAY & MURRAY LLP**


                                           By: *s/ Lesley F. Portnoy*
                                           Lesley F. Portnoy (LP-1941)
                                           122 East 42nd Street, Suite 2920
                                           New York, New York 10168
                                           Telephone: (212) 682-5340
                                           Facsimile: (212) 884-0988
                                           lportnoy@glancylaw.com

                                           -and-

                                           Lionel Z. Glancy
                                           Robert V. Prongay
                                           Casey E. Sadler
                                           Charles H. Linehan
                                           **GLANCY PRONGAY & MURRAY LLP**
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           Telephone:  (310) 201-9150
                                           Facsimile:   (310) 201-9160

                                           *Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

## ORBITAL ATK, INC. SECURITIES LITIGATION

I, Alona Strait, certify that:

1.  I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase **ORBITAL ATK, INC. ,**   the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in **ORBITAL ATK, INC. ,** during the Class Period set forth in the Complaint are as follows:

    (See Attached Transactions)

5.  I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/12/2016
_____
Date

DocuSigned by:

*Alona Strait*
124C75D945FD401...
Alona Strait

**Alona Strait's Transactions in**
**Orbital ATK, Inc. (OA)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 08/28/2015 | Bought | 109 | $72.9000 |
| 11/13/2015 | Bought | 347 | $80.8000 |